**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY | ) | |
| COMPANY individually and as subrogee of | ) | |
| AMERICAN SUNCRAFT CONSTRUCTION | ) | |
| COMPANY, INC., , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-00823-TWP-DML |
| | ) | |
| HALLMARK   SPECIALTY   INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY DENYING MOTION TO TRANSFER

On May 20, 2014, Plaintiff, Grange Mutual Casualty Company ("Grange"), filed a

complaint against Defendant, Hallmark Specialty Insurance Company ("Hallmark"). (Filing No.

1.)  Several months later, after multiple attempts, Grange properly served Hallmark with the

summons and complaint.  Thereafter, on February 24, 2015, Hallmark filed a Motion to Transfer.

(Filing No. 26.)  On March 4, 2015, Grange filed its response.  (Filing No. 29.)  On March 11,

2015, Hallmark filed its reply.  (Filing No. 30.)  For the following reasons, this Court **DENIES**

Hallmark's motion to transfer.

## I.  BACKGROUND

The following facts, which are taken directly from Grange's Complaint and the parties'

briefs, are introduced solely for the purpose of resolving Hallmark's Motion to Transfer.

Both Grange and Hallmark are insurance companies.  Grange is an Ohio corporation,

incorporated under the laws of Ohio and holding its principal place of business in Ohio.  (Filing

No. 1 at 1.)  American Suncraft Construction Co., Inc. ("American Suncraft") is an Ohio

corporation and is Grange's insured.  (Filing No. 1 at 2; Filing No. 29 at 5.)  Hallmark is a Texas corporation and holds its principal place of business in Texas. (Filing No. 1 at 1; Filing No. 26 at 4.)  F&F Coating, Inc. ("F&F") is a Texas corporation and is Hallmark's insured.  (Filing No. 1 at 1; Filing No. 26 at 4; Filing No. 29 at 3.)

In 2010, while working to repair a water tower in Kokomo, Indiana, American Suncraft subcontracted a substantial portion of its work to F&F.  (Filing No. 1 at 2.)  Thereafter, one of F&F's employees was tragically killed in a work-related accident.  (Filing No. 1 at 2.)  A wrongful death suit was subsequently filed in this Court.  (Filing No. 1 at 2.)  On March 11, 2013, the wrongful death suit was dismissed following a settlement, in which Grange paid a significant amount of money on behalf of its insured American Suncraft.  (Filing No. 1 at 2-3.)

During the underlying tort suit, Grange made several attempts to obtain reimbursement from Hallmark, through a tender of defense and a tender of indemnification.  (Filing No. 1 at 2-3.)  Hallmark denied the tender of defense and did not respond to the tender of indemnification.  (Filing No. 1 at 2-3.)  As a result, on May 20, 2014, Grange filed this indemnification suit against Hallmark.  (Filing No. 1.)

Grange, as subrogee of American Suncraft, believes it is entitled to indemnification for the settlement funds Grange paid in the underlying tort lawsuit, through an indemnification clause in the subcontract between American Suncraft and F&F.  (Filing No. 1 at 3-4; Filing No. 1-1).  Further, Grange contends that American Suncraft was named as an additional insured under Hallmark's insurance policy with F&F, entitling Grange to reimbursement under the policy. (Filing No. 1 at 4; Filing No. 1-5.)

In response, Hallmark argues that Grange is not entitled to indemnification under Hallmark's insurance policy with F&F because the policy did not insure against negligence and

because Grange was not added as an additional insured under the policy.  (Filing No. 18 at 2; Filing No. 30 at 3-5.)

## II.  LEGAL STANDARD

28 U.S.C. § 1404(a) provides, in relevant part, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought".  28 U.S.C. § 1404(a) (2012).

Transfer of venue is appropriate under § 1404(a) when the moving party establishes that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.  *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 1:14-CV-88-TWP, 2014 WL 3818289, at *2 (S.D. Ind. Aug. 4, 2014); *State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996).

## III.  DISCUSSION

Neither party argues that venue is improper in either the Southern District of Indiana or in the Western District of Texas.  Accordingly, this Court is left to determine whether this case should be transferred based on convenience.

When deciding whether to transfer an action based on convenience, courts consider several factors, including the convenience of the parties; the convenience of the witnesses; the location of material events and material evidence; and the interests of justice.  *Collins v. City of Seymour*, No. 1:13-CV-1838-TWP, 2014 WL 279865, at *2 (S.D. Ind. Jan. 24, 2014) (J. Pratt); *Brotherhood Mut. Ins. Co. v. GuideOne Mut. Ins. Co.*, No. 1:10-CV-462, 2011 WL 1627114, at *2 (N.D. Ind. Apr. 28, 2011).   This analysis requires an individualized, case-by-case consideration of

convenience and fairness.  *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at \*2; *Bussell*, 939 F. Supp. at 651.

The relative weight afforded to each factor is not specified in § 1404(a).  *Bussell*, 939 F. Supp. at 651.  Instead, courts have broad discretion when weighing the factors and deciding whether to grant or deny a motion to transfer under § 1404(a).  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge"); *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at \*2.  Nevertheless, courts are to remain mindful of the purpose of § 1404(a) which is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at \*2; *Hunter v. Big Rock Transp., Inc.*, No. 1:07-CV-1062-SEB, 2008 WL 1957775, at \*1 (S.D. Ind. May 2, 2008).

The party moving for transfer has the burden to establish, by reference to particular circumstances, that the transferee forum is *clearly* more convenient than the transferor forum. *Coffey*, 796 F.2d at 219-20 (emphasis added); *Overton & Sons Tool and Die Co. v. Precision Tool, Die & Machine Co.*, No. 1:13-CV-1302-TWP, 2014 WL 1669863, at \*5 (S.D. Ind. Apr. 28, 2014) (J. Pratt).  Further, transfer is not justified when doing so would merely shift the inconvenience of the litigation from one party to the other.  *GT Performance Group, LLC, v. Koyo USA, Corp.*, No. 4:12-CV-83-TWP, 2013 WL 4787329, at \*4 (S.D. Ind. Sept. 6, 2013)(J. Pratt); *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at \*2.

## A.   <u>Convenience of the Parties</u>

First, this Court weighs the relative convenience of the parties in either district.  *Collins*, 2014 WL 279865, at \*2; *Brotherhood Mut. Ins. Co.*, No. 1:10-CV-462, 2011 WL 1627114, at \*2

4

(N.D. Ind. Apr. 28, 2011).  At the outset, there is typically a strong presumption in favor of the plaintiff's choice of forum.  *Overton & Sons Tool and Die Co.*, 2014 WL 1669863, at *5; *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-CV-20-TWP, 2012 WL 1712554, at *6 (S.D. Ind. May 15, 2012) (J. Pratt) (noting that overcoming the presumption is a "a steep hill to climb").  In particular, when the forum is the plaintiff's home forum, the plaintiff's choice carries significant weight.  *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Volkswagen Aktiengesellschaft Inc. v. Dee Eng'g, Inc.*, No. 1:02-CV-1669-LJM, 2003 WL 1089515, at *2 (S.D. Ind. Mar. 4, 2003).

Nevertheless, the presumption is rebuttable.  *Overton & Sons Tool and Die Co.*, 2014 WL 1669863, at *5.  For instance, when the chosen forum is not the plaintiff's residence, the plaintiff's choice is entitled to less deference and the defendant's place of residence becomes more important in determining the convenience of the parties.  *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Bussell*, 939 F. Supp. at 651.  Similarly, when the chosen forum has little connection to the relevant events, the plaintiff's choice of forum is entitled to less deference and becomes "simply one factor among many" to be considered.  *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *3; *Dunlap*, 2012 WL 1712554, at *6.

In this case, Grange does not dispute that it is incorporated and has its principal place of business in Ohio.  (Filing No. 1-1 at ¶1.)  Accordingly, because Grange does not reside in this district, this Court gives little deference to Grange's choice of forum.  *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Bussell*, 939 F. Supp. at 651.  Instead, in such situations, this Court is directed to give greater deference to Hallmark's residence, which is Texas.  *Id.*

Nevertheless, while Indiana is not Grange's residence, the Court is mindful that this district is a mere seventy-six miles from the Ohio border.  Consequently, transferring this case to Texas,

while relieving Hallmark's travel burden, would dramatically increase Grange's travel burden. Such a result would not serve the purposes of transfer under § 1404(a). *See GT Performance Group, LLC, v. Koyo USA, Corp.*, No. 4:12-CV-83-TWP, 2013 WL 4787329, at *4 (S.D. Ind. Sept. 6, 2013) (J. Pratt) (noting that transfer is not justified when doing so would merely shift the inconvenience of the litigation from one party to the other); *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2.

In addition, when considering the convenience of the parties, courts also consider the parties' abilities to bear the expense of trial in a particular forum. *Dee Eng'g, Inc.*, 2003 WL 1089515, at **2-3 (holding that the larger of the two parties was in a better position to bear the cost of litigating outside of its home forum); *Bussell*, 939 F. Supp. at 651. In this case, neither party argues that it is in a weaker financial position and is, therefore, unable to bear the extra expense of travel. As a result, this Court will assume that both parties are capable of bearing any additional travel costs and this analysis favors neither party.

In sum, although this Court is advised to give greater deference to Hallmark's residence, this Court finds such deference to be outweighed by the fact that a transfer would impermissibly shift the burden from one party to the other. As a result, this Court considers this factor to favor neither party.

**B.**   **Convenience of the Witnesses**

Second, this Court weighs the relative convenience of the witnesses in either district. *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2. Often, the convenience of witnesses is considered the most important consideration in determining whether to transfer a case. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *4. *But see Abbot v. Lockheed Martin Corp.*, No. 6-CV-701-MJR, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007)

("The convenience of the witnesses weighs heavily only to the extent that the witnesses may actually be unavailable for trial in one forum.").

When addressing this factor, courts consider such factors as the number of witnesses located in the respective districts, travel distances and associated costs for those witnesses, the willingness of those witnesses to appear, whether unwilling witnesses are within the court's reach to compel appearance, and the nature and quality of the witnesses' testimony. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Hunter*, 2008 WL 1957775, at *2.

### 1.    <u>Party Witnesses</u>

Both parties argue that resolution of this contract dispute will likely require witness testimony from their representatives, particularly regarding the formation of the relevant contracts and the interpretation of coverages under those contracts.  Grange notes that its representatives are located in Ohio, while Hallmark notes that its representatives are in Texas.  Nevertheless, when weighing the relative convenience of witnesses, courts generally assign little weight to the location of employee-witnesses because they are usually within the control of the parties and are likely to appear voluntarily in either forum.  *Abbot*, 2007 WL 844903, at *3.

Further, in cases like this one, involving interpretation of a written insurance contract, witnesses often provide limited value to the litigation.  *See, e.g.*, *Bristol W. Ins. Co. v. Clark*, 858 F. Supp. 2d 995, 1003 (S.D. Ind. 2012); *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998) (additionally noting, in an insurance indemnity case, that the witnesses in an underlying tort action offered little value to the litigation).  *But see Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *5 (holding, in a case involving denial of coverage under an insurance contract, that the location of a witnesses who made insurance coverage decisions supported transfer under § 1404(a)).

Consequently, because employee-witnesses are under the control of the parties and because this is contract action where witness testimony is less critical to resolving the dispute, this Court finds neither forum to be clearly more convenient.

### 2.      Non-Party Witnesses

Regarding non-party witnesses, both parties argue that additional witness testimony is necessary from its insured parties.  To this end, Grange notes that the representatives of its insured, American Suncraft, are located in Ohio.  Similarly, Hallmark notes that representatives for its insured, F&F, are located in Texas.  Additionally, Hallmark asserts that witness testimony may also be needed from US Risk Underwriters, the underwriter for Hallmark's contract with F&F. Finally, Grange also asserts, though without explanation, that witness testimony may also be needed from those involved in the underlying tort lawsuit, which was litigated and settled in Indianapolis, Indiana.

When weighing the relative convenience of witnesses, courts assign greater weight to the location of non-party witnesses because securing their testimony may require use of compulsory processes and because they are more likely to be inconvenienced by having to travel.  *Dee Eng'g, Inc.*, 2003 WL 1089515, at *4 ("live testimony is favored over deposition testimony at trial"); *Kendall U.S.A., Inc. v. Cent. Printing Co., et al.*, 666 F. Supp. 1264, 1268 (N.D. Ind. 1987) (holding that transfer was appropriate because the transferee district could exercise compulsory process over non-party witnesses).  Indeed, whenever possible, courts are encouraged to facilitate the "live" presence of material nonparty witnesses.  *Kendall U.S.A., Inc.*, 666 F. Supp. at 1268. Additionally, if non-party witnesses are widely dispersed, courts often evaluate which district can better facilitate the transportation needs of the witnesses.  *See, e.g.*, *Bruce Lee Enters., LLC v. Ecko.Complex, LLC*, No. 1:09-CV-398-WTL, 2010 WL 989909, at **2-3 (S.D. Ind. Mar. 16,

2010) (holding that the Southern District of New York had significant transportation advantages over the Southern District of Indiana, particularly in terms of daily flights to and from the forum).

As already discussed, this Court questions the extent that witness testimony will actually be needed in this case, which primarily deals with interpreting coverages under two insurance policies. *Cf. Bristol W. Ins. Co.*, 858 F. Supp. 2d at 1003; *Picker Int'l, Inc.*, 35 F. Supp. 2d at 573. In addition, this Court does not understand, particularly given Grange's threadbare argument, how witnesses might be needed from the underlying tort litigation. Accordingly, to the extent that non-party witness testimony may actually be needed, this Court considers this factor to favor neither party. Both parties have non-party witnesses which stand to be inconvenienced in either forum, and this Court is not permitted to merely shift the burden from one party to the other.

Because neither forum is clearly more convenient for the party and non-party witnesses, this Court additionally concludes that this factor favors neither party.

**C.**     **Location of Material Events and Evidence**

Third, this Court weighs the location of material events and material evidence. *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2.

**1.**     **Material Events**

Although both parties acknowledge that there are two contracts requiring interpretation in this dispute, central to both parties' arguments is the assertion that their contract is primary to the dispute. On the one hand, Grange asserts that the indemnity agreement between its insured, American Suncraft, and Hallmark's insured, F&F, is controlling, given that Grange's complaint seeks enforcement of the indemnity agreement. Grange notes that this indemnity agreement involved work performed exclusively in Kokomo, Indiana. Further, Grange notes that the underlying tort case, following the tragic events at the Kokomo work site, was litigated in this

Court.  On the other hand, Hallmark argues that its insurance agreement with its insured, F&F, is controlling, given that Grange will have to prove that American Suncraft was added as an "additional insured" under the contract.  Hallmark notes that this insurance agreement was negotiated and underwritten in Texas and that the decision to deny coverage to F&F was also made in Texas.

In many contract cases, courts consider the location of the material events to be where the business relationship began, where the contract was negotiated and executed, and where services were to be performed.  *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *4; *Capstone Int'l, Inc. v. Univentures, Inc.*, No. 3:10-CV-416 JD, 2011 WL 4529380, at *3 (N.D. Ind. Aug. 4, 2011). *Bee see Picker Int'l, Inc.*, 35 F. Supp. 2d 570 at 574 (holding, in case involving indemnity under an insurance contract, that the location where an insurance contract was negotiated and delivered was "irrelevant" to the court's decision whether to transfer under §1404(a) but was, instead, relevant to a choice of law decision).  Additionally, in a breach of contract case, courts also consider the location where business decisions causing the alleged breach occurred to be material to the dispute.  *Id.*  Further, in cases involving decisions to deny contribution under insurance contracts, sometimes even the location of underlying tort actions is considered material.  *See, e.g.*, *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *4 (holding, in a case involving the denial for contribution under an insurance contract, that material events were located where the underlying tort lawsuits occurred, where the insured party resided, and where the insurance contracts were negotiated).

Once again, this Court considers this factor to favor neither party.  Because both contracts will need interpretation to fully resolve this dispute, both are relevant.  Whether one contract or the other is primary is of little consequence.  Grange's contract was made between an Ohio

corporation and a Texas corporation for work to be completed exclusively in Indiana.  Hallmark's contract was made between two Texas corporations.  The underlying tort lawsuit, which triggered this contract dispute, was litigated and settled in this Court.  All are potentially material events, making it nearly impossible for Hallmark to demonstrate that the Texas events *clearly* tip the scales towards transfer.

### 2.    <u>Material Evidence</u>

Regarding material evidence, both parties again make half-hearted arguments that their contracts are controlling, but both acknowledge that documentary evidence typically does not influence a court's decision to transfer a case under § 1404(a).  Indeed, in cases where the material evidence is primarily documentary evidence, courts frequently consider this factor to be neutral in the decision to transfer.  *See, e.g.*, *Bruce Lee Enters., LLC*, 2010 WL 989909, at **2, 4 (holding, in a case involving denial of coverage under an insurance contract, that the location of documentary evidence related to insurance coverage mattered less than the location of the underlying tort suits); *Picker Int'l, Inc.*, 35 F. Supp. 2d at 574 (emphasizing that the location of documentary evidence was only "a minor consideration" and that the location of physical evidence was given more weight).  Given the relative ease in transferring documentary evidence electronically, courts often consider neither forum to be more convenient for doing so.  *Abbot*, 2007 WL 844903, at *4 ("[i]t is likely that paper documents will be scanned for delivery irrespective of the situs of the case since that seems to be the trend in this digital age where jump drives the size of a cigarette lighter can hold multiple gigabytes of information and multi-page documents can be emailed around the world in seconds"); *Picker Int'l, Inc.*, 35 F. Supp. 2d at 574 ("[d]ocuments may be easily sent by mail, copied or even faxed to a remote location.").

This Court will not upset well-settled precedent in this regard. The location of documentary evidence, even in this contract case, does not tip the scales for or against transfer in this case.

Consequently, because there are multiple, potentially material events in this case, spread across both districts, and because the primary evidence in this case is documentary in nature, this Court concludes that this factor similarly favors neither party.

**D.** **Interests of Justice**

Fourth, this Court weighs whether the interests of justice would be better served in either district. *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2. The interest of justice is a separate element of the transfer analysis that relates to the efficient administration of the court system rather than the merits of the underlying dispute. *Coffey*, 796 F.2d at 220-21. The interest of justice analysis may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Coffey*, 796 F.2d at 220; *Kendall U.S.A., Inc.*, 666 F. Supp. at 1268.

Factors considered in this analysis include, the likely speed to trial in each forum; each forum's familiarity with the relevant law; and the relationship of each forum to the controversy, particularly concerning whether jurors have a financial interest in the case, and whether jurors in one forum are better equipped to apply community standards. *Coffey*, 796 F.2d at 221 n.4; *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *5.

**1.** **Speediness of Trial**

Neither party asserts that one district would result in a faster resolution of this case. This Court also concludes that there is little meaningful difference in the adjudicatory speed between the two districts. One method used for determining adjudicatory speed is comparing the median

time between filing and disposition in either district.  *See e.g.*, *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at \*5; *Bruce Lee Enters., LLC*, 2010 WL 989909, at \*3.  In this district, the average time from filing to disposition in civil cases is 8.7 months.  National Judicial Caseload Profile (available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/ 2015/03/31-3).  By comparison, in the Western District of Texas, the average time from filing to disposition in civil cases is 6.9 months.  *Id*.  This Court does not consider the approximately two month difference to be significant enough to warrant transfer in this case.  *Cf. Dee Eng'g, Inc.*, 2003 WL 1089515, at \*5 (holding that a one month difference in median time to trial was not statistically significant enough to favor one forum over another).

## 2. __Familiarity with the Relevant Law__

Both parties spend considerable time in their briefs arguing choice of law principles, in hopes to persuade this Court that transfer leans in their favor.  However, it is well-established that when an action is transferred to a more convenient forum under § 1404(a), the state law of the transferor forum remains controlling.  *Coffey*, 796 F.2d at 222 ("a transfer under § 1404(a), with respect to the outcome of a dispute, should amount to nothing more than a change of courtrooms"); *Bruce Lee Enters., LLC*, 2010 WL 989909, at \*2 ("[s]uch a result is consistent with 'house-keeping' character of § 1404(a) convenience transfers").  As such, this Court considers these arguments to be irrelevant to its analysis regarding a § 1404(a) transfer.  Instead, this Court places greater emphasis on the convenience factors.  *Cf. Bussell*, 939 F. Supp. at 652 (choice of law issue not addressed because the court concluded that the interests of justice and the convenience of the parties and witnesses was best served by transfer).  Further, this Court concludes that, even if Texas contract law ultimately proves controlling, following a choice of law analysis, this Court is more than capable of applying Texas contract law.  Accordingly, this Court does not consider this factor to significantly tilt the scales towards transfer.

13

### 3.      <u>Relationship of Each Community to the Controversy</u>

Finally, Grange argues that this district has a greater interest in resolving this dispute, as the underlying tort case involved tragic events at an Indiana worksite.   However, while the underlying tort case undisputedly impacted the community of Kokomo, Indiana, the immediate dispute is primarily a contract case, with only tenuous contacts to the underlying tort case.  In such circumstances, the location where the relevant contracts were negotiated, executed, and breached are often considered to have a greater interest in resolving the controversy.  *See, e.g., RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *5.  Because this Court has already determined that the material contractual events are spread out across Indiana, Ohio, and Texas, this Court cannot conclude that one district has a greater interest in resolving this particular contractual dispute than the other.

Accordingly, because neither district is clearly more efficient in resolving this dispute, because this Court is capable of applying Texas contract law if necessary, and because neither district has a stronger interest in resolving the dispute, the interests of justice factor also favors neither party.

In conclusion, while the Western District of Texas may have some minor convenience advantages over this forum, Hallmark has not met its burden to demonstrate that the Western District of Texas is *clearly* the more convenient forum.   Consequently, this Court denies Hallmark's motion to transfer under 28 U.S.C. §1404(a).

### IV.  <u>CONCLUSION</u>

For the aforementioned reasons, this Court now **DENIES** Hallmark's Motion to Transfer. (Filing No. 26.)   Consistent with this Court's prior order (Filing No. 37), the parties are

**ORDERED** to file a new Case Management Plan within **seven (7) days of the date of this Order**.

       **SO ORDERED.**

Date: 9/16/2015

                            _____
                            TANYA WALTON PRATT, JUDGE
                            United States District Court
                            Southern District of Indiana

DISTRIBUTION:

William Henry Kelley
KELLEY & BELCHER
akelley@kelleybelcherlaw.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Lewis S. Wooton
LEWIS WAGNER LLP
lwooton@lewiswagner.com

Michael Robert Giordano
LEWIS WAGNER LLP
mgiordano@lewiswagner.com