**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY COMPANY individually and as subrogee of AMERICAN SUNCRAFT CONSTRUCTION COMPANY, INC., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-00823-TWP-DML |
| | ) | |
| HALLMARK SPECIALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Grange Mutual Casualty Company ("Grange") (Filing No. 63) and Defendant Hallmark Specialty Insurance Company ("Hallmark") (Filing No. 71). This action arises out of the denial of tender by Hallmark to provide indemnification and a defense to Grange's insured, American Suncraft Construction Company ("Suncraft Construction"), following  a wrongful death suit in which Grange paid $500,000.00 on behalf of Suncraft Construction. Following the denial, Grange filed for relief in this Court, requesting that the Court order Hallmark to make a payment of $500,000.00 to Grange for indemnification. Both parties moved for summary judgement on the Complaint. For the following reasons, the Court **DENIES** Grange's Motion for Summary Judgment and **GRANTS** Hallmark's Cross-Motion for Summary Judgment.

# I.   <u>BACKGROUND</u>

The following facts are undisputed.  Both Grange and Hallmark are insurance companies.
Grange is an Ohio corporation with its principal place of business in Ohio.  Grange insures Suncraft
Construction, which is also an Ohio corporation.  Hallmark is a Texas corporation and holds its
principal place of business in Texas.  Hallmark insures F&F Coating, Inc. ("F&F") which is also
a Texas corporation.

In 2010, Indiana-American Water Co., Inc., ("Indiana-American") an Indiana corporation,
contracted with Suncraft Construction to repair and refurbish a water tower located in Kokomo,
Indiana.  On August 23, 2010, Suncraft Construction subcontracted with F&F to complete a
substantial amount of the repairs on the water tower ("the Subcontract").  The Subcontract included
an indemnity agreement which states as follows:

> To the fullest extent permitted by law, the Subcontractor [F&F] shall indemnify
> and hold harmless the Contractor [American Suncraft Construction], Contractor's
> representatives, agents and employees from all claims, losses, damages and
> expenses, including attorney's fees arising out of or resulting from the performance
> of the work, provided that such claim, loss, damage or expense is caused in whole
> or in part by any negligent act or omission of the Subcontractor, anyone directly
> employed by them or anyone whose acts they are liable for, and attributes to bodily
> injury, sickness, disease or death, mold growth, or to injury to or destruction of
> tangible property (other than the work itself) including any resulting loss of use,
> regardless of whether or not it is caused in part by a party indemnified above.

([Filing No. 1-1 at 3](#)).

On September 9, 2010, Rodolfo Torrez Vazquez ("Vazquez"), an employee at F&F, was
repairing the water tower under the Subcontract agreement between F&F as subcontractor and
Suncraft Construction as contractor.  The ladder supporting Vazquez collapsed, resulting in his
tragic death.  On April 26, 2011, Vazquez's estate filed a wrongful death lawsuit in the United
States District Court, Southern District of Indiana, Case No. 1:10-cv-01346.  There is no dispute
that Suncraft Construction and Indiana-American were negligent for failing to maintain the ladder

used by Vazquez at the time of his death.  On March 11, 2013, the wrongful death suit was dismissed following a settlement, where Grange paid $500,000.00 to Vazquez's estate on behalf of Suncraft Construction and $12,500.00 on the part of Indiana-American.

During the underlying tort suit, Grange made several attempts to obtain reimbursement from Hallmark, through a tender of defense and a tender of indemnification.  Hallmark denied the tender of defense and did not respond to the tender of indemnification.  As a result, on May 25, 2016, Grange filed an Amended Complaint against Hallmark, asserting that it is entitled to indemnity because Suncraft Construction is named as an additional insured on F&F's Hallmark liability policy (the "Hallmark Policy") and pursuant to the indemnification provision of the Subcontract.  (Filing No. 58 at 4; Filing No. 58-5.)  The Hallmark Policy states that:

> [Hallmark] will pay those sums that [F&F] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Hallmark] will have the right and duty to defend [F&F] against any "suit" seeking those damages. However, [Hallmark] will have no duty to defend [F&F] against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.…

(Filing No. 26-1 at 7).  Grange also asserts that F&F agreed to indemnify Suncraft Construction under the Subcontract and now Hallmark is required to repay Grange the $500,000.00 that F&F had an obligation to pay.  (Filing No. 58 at 3-4; Filing No. 58-1.)

In response, Hallmark denies that it owed a defense or indemnification to Grange or Suncraft Construction.  Hallmark argues that Texas law applies and the indemnity provision under the Subcontract is unenforceable under Texas law.  Hallmark asserts that Suncraft Construction is not a named insured or an additional insured under the Hallmark Policy.  Hallmark further contends that the wrongful death suit derived from Suncraft Construction's negligence and the Hallmark Policy with F&F does not insure against negligence, therefore it is not legally entitled to

indemnification from F&F under the terms of the contract.  Both parties move for summary judgment on the Complaint.  (Filing No. 63; Filing No. 71.)

## II.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986).  Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."  *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment."  *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.  DISCUSSION

Grange asserts that it is entitled to indemnity under the Hallmark Policy for two reasons. Grange first argues that Hallmark's insured, F&F, agreed to indemnify Suncraft Construction under the Subcontract. Grange contends that Hallmark is required to indemnify it because the Hallmark Policy provides coverage for contracts that F&F is obligated to pay. Grange also argues that it is entitled to indemnity under the Hallmark Policy because Suncraft Construction received a certificate of liability insurance, naming it an additional insured under the Hallmark Policy. Hallmark filed a cross motion for summary judgment, asserting that it is not required to indemnify Grange because the Subcontract's indemnity agreement is invalid under Texas law. Hallmark also asserts that under Texas law, it is not obligated to indemnify Grange because Suncraft Construction is not listed as a named insured or an additional insured under the Hallmark Policy.

### A.  Choice of Law

As an initial matter, the Court must determine which state's law applies – Indiana or Texas. Both Grange and Hallmark acknowledge that there are two contracts requiring interpretation in

this dispute.  However, both parties assert that their contract is primary to the dispute.  Grange contends that Indiana law applies, while Hallmark asserts that Texas law applies.

In diversity cases, a court must apply the substantive law of the forum in which it sits, including that pertaining to choice of law.  *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013).  If the laws of more than one jurisdiction might apply to a particular case, federal courts must apply the forum state's choice of law rules.  *Jean v. Dugan*, 20 F.3d 255, 260–61 (7th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).  Both parties agree that Indiana choice of law rules apply.  Accordingly, the Court will apply Indiana's choice of law rules in making its determination of which state's law governs the substantive issues.

Under Indiana law, "before applying the choice of law analysis all laws must be carefully examined to determine that a conflict actually exists."  *Loos v. Farmer's Tractor & Implement Co.*, 738 F. Supp. 323, 324 (S.D. Ind. 1990); *See Am. Emp'rs Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1176 (Ind. Ct. App. 2005).  This determination turns on whether the differences are "important enough to affect the outcome of the litigation."  *Simon v. United States,* 805 N.E.2d 798, 805 (Ind.2004).  There is no dispute that Texas' and Indiana's laws regarding insurance indemnity clauses are starkly different as to certainly affect the outcome of litigation.  Both parties recognize that an indemnity agreement, almost identical to the one at issue in this case, is enforceable under Indiana law but is unenforceable under Texas law.

When the laws potentially governing a contract action do in fact conflict, Indiana courts apply the "most intimate contacts" test to resolve any choice of law issues.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815 (Ind. 2010) (citing *W.H. Barber Co. v. Hughes*, 63 N.E.2d 417, 423 (Ind. 1945)).  "[T]he test requires the court to analyze

'all acts of the parties touching the transaction in relation to the several states involved' and apply 'the law of that state with which the facts are in most intimate contact.'" *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 581 (7th Cir. 1994) (quoting *Hughes*, 223 N.E.2d at 423).

In assessing contacts, Indiana courts apply the factors found in the Restatement (Second) of Conflict of Laws § 188(2). These factors are:  1) the place of contracting; 2) the place of contract negotiation; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile residence, nationality, place of incorporation, and place of business of the parties. *Am. Emp'rs Ins. Co.*, 838 N.E.2d at 1177 (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)).

Grange contends that Indiana law applies in this case because its Complaint seeks enforcement of the indemnity agreement under the Subcontract.  Grange asserts that the Subcontract was negotiated and signed in Indiana and performance under the Subcontract occurred in Indiana.  Grange further argues that the underlying tort case, which caused Grange to pay $500,000.00 on behalf of Suncraft Construction, was litigated in Indiana.  On the other hand, Hallmark argues that this Court should view the facts in light of Texas law.  Hallmark asserts that its policy is controlling because Grange is seeking indemnity from Hallmark under the Hallmark Policy.  Hallmark contends that its policy was negotiated with F&F, a Texas corporation, and underwritten in Texas using Texas-specific endorsements and forms.

There is no dispute that Indiana is central to the Subcontract.  It is equally clear that Texas is central to the Hallmark Policy.  The major dispute is, which of the two contracts is principal to this case.  The Court agrees with Hallmark and finds that the Hallmark Policy is the central contract.  Hallmark is not a party to the Subcontract and, as Hallmark persuasively argued, the

mere existence of an indemnity agreement in the Subcontract does not entitle Grange to benefits under the Hallmark Policy.  In order to receive benefits under the Hallmark Policy, Grange must show that the terms of the indemnity agreement in the Subcontract fall within the scope of coverage in the Hallmark Policy and is not otherwise excluded.  Accordingly, because Grange seeks indemnity from Hallmark under the Hallmark Policy and is not seeking a direct claim under the Subcontract, Texas law must apply.

**B.**     **Coverage under the Subcontract's Indemnity Clause**

Grange asserts that Hallmark is required to indemnify Grange and Suncraft Construction, because Hallmark's insured, F&F, knowingly and willingly contracted to indemnify Suncraft Construction for Suncraft Construction's own negligence.  The Hallmark Policy states that it "will pay those sums that [F&F] becomes legally obligated to pay…."  The indemnity provision under the Subcontract states that:

> To the fullest extent permitted by law, **the Subcontractor [F&F] shall indemnify and hold harmless the Contractor [American Suncraft],** Contractor's representatives, agents and employees **from all claims, losses, damages and expenses, including attorney's fees arising out of or resulting from the performance of the work**, provided that such claim, loss, damage or expense is caused in whole or in part by any negligent act or omission of the Subcontractor, anyone directly employed by them or anyone whose acts they are liable for, and attributes to bodily injury, sickness, disease or death, mold growth, or to injury to or destruction of tangible property (other than the work itself) including any resulting loss of use **regardless of whether or not it is caused in part by a party indemnified above.**

(Filing No. 1-1 at 3) (emphasis added).  Grange contends that under this indemnity provision, F&F is legally obligated to pay Suncraft Construction, and as such, based on the Hallmark Policy, Hallmark is required to indemnify Grange.  Hallmark relies on *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.,* 263 S.W.3d 291, 296 (Tex. App. 2007), when arguing that the Subcontract's indemnity provision, as it relates to indemnifying Suncraft Construction for Suncraft

Construction's own negligence, is unenforceable.  Hallmark argues that the contractual language, "regardless of whether or not it is caused in part by a party indemnified above," does not meet the express negligence test required under Texas law because the language does not expressly provide that F&F will indemnify Suncraft Construction for Suncraft Construction's own negligence.  *See Gilbane Bldg. Co.*, 263 S.W.3d at 297.  In *Gilbane Bldg. Co.,* the Texas court ruled that a nearly identical indemnity agreement[1] was not enforceable because the provision did not comply with the express negligence test mandated by Texas law.  "Under the express negligence doctrine, an intent to indemnify one of the parties from the consequences of its own negligence, 'must be specifically stated in the four corners of the document.'"  *Id.* (quoting *Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 192 (Tex.2004)).

Grange does not dispute that under Texas law the indemnification language is insufficient to require F&F to indemnify Suncraft Construction for its own negligence.  Grange argues only that the indemnification provision is sufficient under Indiana law to require F&F to indemnify Suncraft Construction for Suncraft Construction's own negligence.  Because Hallmark's policy is the principal contract and Indiana courts do not engage in *"dépeçage"*, which is the choice of law process of analyzing different issues within the same case or claim separately under the laws of different states, this Court will apply Texas law to both contracts.  *See Simon v. U.S.,* 805 N.E.2d 798, 801-803 (Ind.2004).  Under Texas law, the terms of the Subcontract's indemnity provision do not expressly require F&F to indemnify Suncraft Construction for its own negligence.

[1] "...(Keystone) agrees to indemnify and hold harmless, [Gilbane], the Owner, the Architect/Engineer and all of their agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance or failure in performance of [Keystone's] work under this Agreement provided that any such claim, damage, loss, or expense (1) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, (2) is caused, in whole or in part, by any negligent act or omission of [Keystone] or anyone directly or indirectly employed by [Keystone], or anyone for whose acts [Keystone] may be liable, regardless of whether caused in part by a party indemnified hereunder..." *Gilbane Bldg. Co.,* 263 S.W.3d at 296.

Accordingly, Hallmark, as F&F's insurer, is not required to indemnify Grange or Suncraft Construction under the Subcontract.

## C.    <u>Coverage as an Additional Insured</u>

Grange alternatively argues that it is entitled to indemnity under the Hallmark Policy because Suncraft Construction was named as an additional insured under the policy.  Grange contends that an authorized Hallmark agent, Secure Protection Insurance Agency ("Secure Protection"), issued a certificate of liability insurance to Ron Bowling ("Bowling"), Suncraft Construction's owner, naming Bowling and Suncraft Construction as additional insureds.  ([Filing No. 58-5](#).)  Grange argues that Secure Protection had actual authority from Hallmark to bind Hallmark to the coverage provided under the certificate of liability insurance.

In response, Hallmark asserts that Grange's contention that Secure Protection is an authorized Hallmark agent is false.  Hallmark argues that it does not issue certificates of liability insurance and that it did not authorize or give any authority to Secure Protection to issue a certificate of liability insurance to Bowling.  Hallmark contends that even if Grange presented evidence that Secure Protection had actual authority to issue the certificate, under Texas law, Secure Protection was prohibited from issuing a certificate of liability insurance and Hallmark is not bound by the certificate of liability insurance.  *See* Tex. Ins. Code § 1811.051 ("[a] property or casualty insurer or agent may not issue a certificate of insurance or any other type of document purporting to be a certificate of insurance if the certificate or document alters, amends, or extends the coverage or terms and conditions provided by the insurance policy referenced on the certificate or document.")

Additionally, Hallmark contends that the certificate of liability insurance that Bowling received is subordinate to the terms of the Hallmark Policy and, under the Hallmark Policy,

Suncraft Construction is not listed as an additional insured.  Hallmark additionally argues that, by its language, the certificate did not create any rights to Suncraft Construction that were not contained in Hallmark's policy.  The face of the certificate of liability insurance that Bowling received states the following conspicuous disclaimer:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATION DOES NOT EXTEND OR ALTER COVERAGE AFFORDED BY THE POLICIES BELOW**.

(Filing No. 58-5.)  In reply, Grange relies on Indiana law when asserting that "the purpose of issuing a certificate of insurance is to inform the recipient thereof that insurance has been obtained." *American Family Ins. v. Globe American Cas. Co.,* 774 N.E.2d 932, 939 (Ind.App. 2002).  Grange further contends that if Hallmark's argument is accepted, then the certificate is entirely illusory.

The Court finds that it is well settled under Texas law that a certificate of insurance, with the above language, is subordinate to the terms of an insurance policy.  *See TIG Ins. Co. v. Sedgwick James of Washington*, 184 F. Supp. 2d 591, 597 (S.D. Tex. 2001) ("It is well-established under Texas law that when a certificate of insurance contains language stating that the certificate does not amend, extend, or alter the terms of any insurance policy mentioned in the certificate, the terms of the certificate are subordinate to the terms of the policy."); *Granit Constr., Inc. v. Bituminous Ins. Cos.*, 832 S.W.2d 427, 430 (Tex. App.—Amarillo 1992) ("[W]e observe that the certificate itself did not manifest the insurance coverage afforded [claimant] as an insured and, by its very language, specified that the insurance coverage was that provided by, but subject to the terms, exclusions, and conditions of, the named insurance policies.").

Accordingly, because Grange has not presented evidence that Suncraft Construction is listed as an additional insured within the Hallmark Policy, the Court finds that Hallmark is not

required to indemnify Grange or Suncraft Construction pursuant to the certificate of liability insurance.

## D.   **Exclusion under the Hallmark Policy**

Hallmark argues that even if Grange established that F&F was required by contract to indemnify Suncraft Construction or that Suncraft Construction was an additional insured under the Hallmark Policy, Hallmark is still not required to indemnify Grange because its policy agreement includes an "Employer's Liability Exclusion."  The exclusion states as follows:

> **EMPLOYER'S LIABILITY EXCLUSION**
> \*\*\*
> e. Employer's Liability
> "Bodily injury" to:
> 1.   An "Employee" of any "insured"; any "subcontractor" hired by an "insured",
>       or any "employee" of any "subcontractor" arising out of and in the course of:
>           a.   Employment by any "insured"; or
>           b.   Performing duties related to the conduct of the business of any "insured"
>                or any "subcontractor".
>
> 2.   The spouse, child, parent, brother or sister of that "employee", "subcontractor",
>       or "employee" of any "subcontractor" as a consequence of paragraph (1) above.
>
> This exclusion applies:
> (1) Whether any "insured" or any "subcontractor" may be liable as an employer or
>      in any other capacity; and
>
> (2) To any obligation to share damages with or repay someone else who must pay
> damages because of the injury.
>
> THIS EXCLUSION EVEN APPLIES TO LIABILITY ASSUMED BY THE
> "INSURED" UNDER AN "INSURED CONTRACT".

(Filing No. 26-1 at 33.)  Hallmark contends that because Vasquez was an employee of F&F and was injured in the course of his employment, the plain language of the "Employer's Liability Exclusion" under the Hallmark Policy eliminates liability coverage arising from Vasquez's injury and completely bars Grange from recovering under the Hallmark Policy.

Grange does not dispute Hallmark's contention that the plain language of the exclusion policy eliminates any liability Hallmark would owe to Grange; however, in response, Grange relies on Indiana law when arguing that Hallmark's liability exclusion for "bodily injury" is structurally ambiguous and, therefore, is unenforceable. *State Auto. Mut. Ins. Co. v. Flexdar, Inc*., 964 N.E.2d 845, 848 (Ind. 2012) ("It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured."); *National Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631, 636-637 (Ind. Ct. App. 2007) (ruled that a single-sentence, fine print exclusion placed at least fourteen pages further than other liability exclusions in a contract was structurally ambiguous, where the exclusion did not "employ any significant bolding, capitalization or interlineations to clarify and set apart the separate exclusions."). In reply, Hallmark contends that unlike the Indiana cases relied on by Grange, Hallmark's "Employer's Liability Exclusion" policy is bolded, capitalized and on a separate page from other provisions in the Hallmark Policy, which clarifies and sets apart Hallmark's separate exclusions.

Grange further argues that it is fundamentally unfair to deny coverage under the Hallmark Policy because the exclusion page is hidden away inconspicuously near the end of the policy, it contradicts language within the policy, and the exclusion page is not properly marked. In response, Hallmark argues that its exclusion policy is a single, properly marked page that is not hidden away inconspicuously near the end of the policy and is found in between two other exclusionary endorsements. Hallmark contends that the beginning of its policy contains a schedule of forms and endorsements, similar to a table of contents, which specifically provides notice that the "Employer's Liability Exclusion" policy is included in the agreement and also lists the page number where the exclusion policy can be found. Hallmark points out that its exclusion page does

13

not contradict other parts of its policy because the exclusion clearly and unambiguously states that it replaces and deletes the original "Employer's Liability" section within the main policy.

The Court finds that Hallmark's exclusion policy is sufficiently distinguished from the Indiana exclusion policies relied upon by Grange, however, the Court notes that neither party provided analogous Texas case law.   Accordingly, this Court is unable to determine whether Hallmark's exclusion policy is "structurally ambiguous" under Texas law.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that Hallmark did not wrongfully deny Grange's tender of defense and the Court **DENIES** Grange's Motion for Summary Judgment (Filing No. 63), and **GRANTS** Hallmark's Cross Motion for Summary Judgment (Filing No. 71).

**SO ORDERED.**

Date: 10/28/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Henry Kelley
KELLEY & BELCHER
akelley@kelleybelcherlaw.com

Thaddeus Craig Kelley
KELLEY BELCHER & BROWN
tkelley@kelleybelcherbrown.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Lewis S. Wooton
LEWIS WAGNER LLP
lwooton@lewiswagner.com

Michael Robert Giordano
LEWIS WAGNER LLP
mgiordano@lewiswagner.com